# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN P. SHULAK, individually and as
representative of a class of participants and
beneficiaries and on behalf of the BMO 401(k)
Savings Plan,

        Plaintiff,

v.

BMO FINANCIAL CORP., et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 25-cv-02232

Judge Andrea R. Wood

## MEMORANDUM OPINION AND ORDER

Plaintiff John Shulak is a participant in the BMO 401(k) Savings Plan ("Plan"), a defined

contribution, individual account, employee pension benefit plan sponsored by Defendant BMO

Financial Corp. ("BMO") and administered by Defendant Benefits Administration Committee of

BMO Financial Corp. ("Committee"). According to Shulak, Defendants have used certain

contributions to the Plan that did not vest prior to a participant's termination of employment in

manner that was to their own benefit rather than to the benefit of Plan participants. Shulak

therefore has brought the present action on behalf of himself and a putative class of similarly

situated Plan participants, asserting various claims under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Before the Court is Defendants'

motion to dismiss Shulak's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

(Dkt. No. 69.) For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

For the purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts

in the complaint and views those facts in the light most favorable to Shulak as the non-moving

party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint alleges as follows.

Shulak is a participant in the Plan, which is a defined contribution, individual account, employee benefit pension plan.[1] (Compl. ¶¶ 5–6, Dkt. No. 1.) The Plan is sponsored by BMO, and BMO administers the plan through the Committee, an entity it created to assist in the management and administration of the Plan and its assets. (*Id.* ¶ 8.) The Plan is funded by both participant contributions and employer contributions. (*Id.* ¶ 13.) As the employer, BMO[2] makes two different types of contributions. First, BMO makes employer matching contributions equal to the amount of each participant's own contributions, up to a maximum of 5% of the particular participant's earnings. (Defs.' Mot. to Dismiss, Ex. A, Plan Document § 4.1, Dkt. No. 35-3.)[3] Second, BMO makes additional employer non-elective contributions equal to 2% of a participant's earnings, even if that participant makes no contribution of their own during that contribution period. (Plan Document, First and Fifth Amendments § 4.1A.) Upon being deposited into the Plan's trust fund, the participant and employer contributions become Plan assets. (Compl. ¶ 13.)

---

[1] ERISA defines "individual account plan" or "defined contribution plan" to "mean[] a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

[2] Participants in the Plan include employees of several BMO subsidiaries and affiliates. (Pl.'s Mem. in Supp. of Mot. to Dismiss at 3, Dkt. No. 35-1.) For simplicity, the Court uses "BMO" to refer to the employer of all Plan participants.

[3] While the Plan Document is not attached to the complaint, because various provisions are referenced in the complaint and give rise to the asserted claims, it is incorporated by reference and properly considered in connection with Defendants' Rule 12(b)(6) motion. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

While Plan participants immediately become vested in their own contributions and employer matching contributions, employer non-elective contributions vest only after the participant has completed three years of service. (Compl. ¶ 14; Plan Document § 9.1, First and Fifth Amendments § 9.1.) If a Plan participant has a break in their service prior to the vesting of employer non-elective contributions, the employer contributions associated with that participant are "forfeited upon the earlier of (i) the time the participant receives a distribution of the entire nonforfeitable portion of his account balances under the [P]lan, or (ii) the date the participant incurs five consecutive one year breaks in service." (Compl. ¶ 15; Plan Document, First Amendment § 10.1(d).) The Plan then provides that forfeited employer non-elective contributions "shall be applied to pay [P]lan expenses as permitted under subsection 11.6 or to reduce future non-elective contributions." (Plan Document, First Amendment § 10.1(d).) The Committee controls the allocation of forfeited contributions. (Compl. ¶ 15.)

Despite the Plan providing the Committee with two options for using forfeitures, the Committee has almost exclusively consistently chosen to use forfeitures to offset future employer non-elective contributions. (*Id.* ¶ 18.) As Defendants acknowledge, they used forfeitures to reduce BMO's non-elective contributions by $1,278,427 in 2023 and by $1,180,804 in 2022. (*Id.* ¶ 17.) Shulak contends that the Committee's allocation of forfeitures puts the interests of itself and BMO ahead of those of the Plan's participants, given that participants are otherwise responsible for Plan expenses. (*Id.* ¶¶ 18–19.) For that reason, he has brought the present action alleging that Defendants committed the following ERISA violations: breach of the fiduciary duties of loyalty and prudence, 29 U.S.C. § 1104(a) (Count I); breach of the anti-inurement provision, 29 U.S.C. § 1103(c)(1) (Count II); engaging in a prohibited transaction, 29 U.S.C. § 1106 (Count III); and failing to monitor fiduciaries (Count IV).

**DISCUSSION**

Defendants move to dismiss each of the complaint's four Counts. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## I.      Breach of Fiduciary Duty

By choosing to use forfeited employer non-elective contributions to reduce BMO's future contributions rather than paying administrative expenses, Shulak contends that Defendants failed to act in accordance with their fiduciary duties under ERISA. To state a breach of fiduciary duty claim under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (internal quotation marks omitted). In their motion to dismiss, Defendants focus on the second element, arguing that Shulak fails to plausibly allege that Defendants breached any fiduciary duty.

Relevant here, ERISA imposes upon fiduciaries the duties of loyalty and prudence. A fiduciary's duty of loyalty requires it to discharge its "duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The fiduciary also has a duty of prudence,

which requires it to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "These duties are the highest known to law." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024) (internal quotation marks omitted).

While the Plan expressly provides that the Committee may use forfeited employer non-elective contributions to "pay [P]lan expenses as permitted under subsection 11.6" (Plan Document, First Amendment § 10.1(d)), the Plan does not require the Committee to do so. As discussed above, the Committee is also permitted to use forfeitures "to reduce future non-elective contributions." (*Id.*) And the Plan does not mandate that one option be prioritized over another. Under ERISA, a fiduciary must discharge its duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" the requirements of ERISA. 29 U.S.C. § 1104(a)(1)(D). Because a fiduciary's duties under ERISA "trump[] the instructions of a plan document," that the Plan allows the Committee discretion in how to use forfeitures does not necessarily shield Defendants against claims for breach of fiduciary duty. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). Thus, Shulak claims that Defendants' fiduciary duties under ERISA required them to exercise the discretion afforded to the Committee under the Plan by first allocating forfeitures to participants' benefit and paying the Plan's administrative expenses for which they would otherwise be responsible. Only when those administrative expenses are fully paid can Defendants then use the remaining forfeitures to reduce BMO's employer non-elective contributions.

To begin, the Court addresses the parties' dispute as to the scope of the Committee's discretion in allocating the forfeitures. Defendants contend that the complaint improperly suggests that the Plan authorizes the Committee to use forfeitures to pay for any and all of the Plan's administrative expenses when the Plan expressly provides for payment of expenses "as permitted under subsection 11.6." (Plan Document, First Amendment §10.1(d).) And subsection 11.6 concerns only "Committee Expenses" whereas the Plan also identifies at subsection 12.11 a separate category of "Plan and Trust Expenses." (*Compare* Plan Document § 11.6, *with id.* § 12.11.) The Plan provides that both types of expenses are to be paid from the Plan's trust fund, but only with respect to Plan and Trust Expenses does the Plan specify that "expenses to be paid or reimbursed from the trust fund may be drawn from participants' accounts." (*Id.* § 12.11.)

Defendants assert that Shulak's failure to recognize the distinction between the two types of expenses is fatal to his breach of fiduciary duty claims. In particular, Defendants' alleged breaches of their fiduciary duties are predicated on the allegation that their conduct "caus[ed] participants to incur expenses that could otherwise have been covered in whole or in part by forfeited funds." (Compl. ¶ 18.) But that allegation is belied by the fact that the only expenses that the Plan authorizes the Committee to pay with forfeitures are Committee Expenses, and those expenses are not otherwise borne by Plan participants. The Court finds unavailing Shulak's response that Committee Expenses and Plan and Trust Expenses are one and the same. That the Plan specifically delineates the two categories of expenses and makes only one category of expenses directly chargeable to participants' accounts demonstrates the distinctiveness of the two types of expenses. *E.g.*, *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) ("Plan language is given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire

6

agreement. All language of a plan should be given effect without rendering any term superfluous." (citation omitted)). Properly interpreted, the Plan only authorizes the Committee to use forfeitures either to reduce future employer non-elective contributions or to pay Committee Expenses. The complaint therefore errs insofar as it alleges that Defendants had discretion to allocate forfeitures to cover expenses directly chargeable to Plan participants—*i.e.*, Plan and Trust Expenses—and the breach of fiduciary duty claims predicated on such conduct cannot stand.

Even if the Plan authorized Defendants to use forfeitures to pay for expenses that would otherwise be incurred by participants, the Court would still reject the breach of fiduciary duty claims based on the allegations here. Like the majority of district courts that have addressed substantially similar claims, the Court believes that interpreting ERISA's fiduciary duty provisions as "creat[ing] an unqualified duty to pay administrative costs" would "improperly extend the protection of ERISA beyond its statutory framework." *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024); *see also Cain v. Siemens Corp.*, No. 24-8730, 2025 WL 2172684, at *4 (D.N.J. July 31, 2025) (collecting cases). "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they chose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). ERISA's purpose is simply "to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.* Put another way, "ERISA's principal function" is "to 'protect contractually defined benefits.'" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)). In service of that purpose, Congress enacted ERISA's fiduciary duty provisions to "increase the

7

chances that employers will be able to honor their benefits commitments." *Spink*, 517 U.S. at 887.

The flaw in Shulak's theory of liability is that it extends Defendants' fiduciary duties beyond "protect[ing] the benefits which are due to an employee under a plan." *Hutchins*, 737 F. Supp. 3d at 863. With respect to employer non-elective contributions, the Plan entitles each participant to a contribution equal to 2% of that individual participant's earnings. (Plan Document, First and Fifth Amendments § 4.1A.) Shulak does not contend that Defendants' acts have deprived him of any portion of his employer non-elective contribution or any other benefit guaranteed to him under the Plan. Nonetheless, he argues that Defendants' use of forfeitures for their own benefit is inconsistent with their fiduciary duty to act "solely in the interest of participants and beneficiaries."

Even the courts that have found that a fiduciary has a duty of loyalty with respect to its exercise of discretion in allocating forfeitures have not gone so far as to recognize the existence of a "categorical rule that employers must pay plan expenses." *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 888 (C.D. Ill. 2025). Rather, they hold that "what type of forfeiture allocation 'would be in the best interests of participants depends on the particular facts and circumstances present at the time of the allocation decision.'" *Id.* (quoting *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087, at *2 (N.D. Cal. Mar. 3, 2025)). In those cases, a plaintiff "allows for the possibility that an offset of employer contributions may sometimes also be to the ultimate benefit of participants and beneficiaries" but also specifically alleges why the allocation was not in the participants' interest in the circumstances of that case. *Id.* at 888, 890. But here, the complaint contains only conclusory allegations as to why

Defendants' allocation of the forfeitures was for their own benefit rather than that of the Plan's participants.

This case is also distinguishable in that Shulak would go beyond the language of the Plan itself, which, as discussed above, authorizes Defendants only to pay Committee Expenses as an alternative to reducing future employer non-elective contributions as opposed to plan expenses generally. *See Buescher*, 791 F. Supp. 3d at 879 ("Under . . . the Plan . . . forfeitures may be used to pay administrative expenses or to reduce Employer Contributions . . . ." (internal quotation marks omitted)); *McManus*, 2025 WL 732087, at *2 ("At the discretion of Defendants . . . forfeitures may be used to either pay the Plan's expenses or reduce the Company's contributions to the Plan."). Indeed, the complaint alleges not only that Defendants breached their fiduciary duties by failing to allocate forfeitures to pay expenses other than the Committee Expenses but also by failing to "allocat[e] forfeited funds to participants' accounts." (Compl. ¶ 18.) Under Shulak's theory, ERISA's fiduciary duties of prudence and loyalty would effectively create a new benefit in the payment of administrative expenses even as the Plan provides no such entitlement. *Hutchins*, 737 F. Supp. 3d at 863. This Court cannot accept that ERISA's fiduciary duties reach outside of the benefits provided for in the Plan. *See Clair v. Harris Tr. & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999) ("[The] benefits payable under an ERISA plan are limited to the benefits specified in the plan."); *see also McCutchen*, 569 U.S. at 100–01 (noting that ERISA's "statutory scheme . . . 'is built around reliance on the face of written plan documents'" (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995))). Instead, it agrees with the Circuit Courts that have held that "ERISA does not create an exclusive duty to maximize pecuniary benefits." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (internal quotation marks omitted); *see also Rozo v. Principal Life*

*Ins. Co.*, 48 F.4th 589, 598 (8th Cir. 2022) (same); *Foltz v. U.S. News & World Report, Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989) (same); *cf. Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants."). As such, the fiduciary's duties are "fulfilled where the fiduciary ensures that participants have received their ***promised*** benefits." *Polanco v. WPP Grp. USA, Inc.*, No. 24-cv-9548 (JGK), 2025 WL 3003060, at *3 (S.D.N.Y. Oct. 27, 2025).

The Court does not view the two decisions from other courts in this District that Shulak has introduced as supplemental authorities to be contrary to the above analysis. (*See* Pl.'s Fourth Notice of Suppl. Authority, Dkt. No. 106; Pl.'s Fifth Notice of Suppl. Authority, Dkt. No. 108.) First, the district court's decision in *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 WL 194772 (N.D. Ill. Jan. 26, 2026), is inapposite because the plan there did "not give discretion as to how the Plan Committee [could] allocate forfeitures. It instead mandate[d] the Plan Committee to utilize forfeitures to pay reasonable administrative expenses . . . before offsetting employer contributions." *Id.* at *8. Thus, the district court concluded that the duty of loyalty was "not being 'stretched' to create an additional benefit. Rather, the Plan Document [was] structured to guarantee the Plan participants the benefit of covering administrative expenses via forfeitures in the first instance." *Id.* On the other hand, the allegations in *Russell v. Illinois Tool Works, Inc.*, No. 22 CV 02492, 20226 WL 332662 (N.D. Ill. Feb. 9, 2026), are closer to those here. However, the *Russell* court noted that the plaintiffs were not claiming that it was "a *per se* breach any time a fiduciary uses forfeitures for employer contributions" but only "allege[d] liability for certain forfeiture use under the circumstances presented [t]here." *Id.* at *5. And, in *Russell*, the plan gave the fiduciaries discretion between using forfeitures to reduce the employer's contributions or "to pay reasonable [p]lan expenses." *Id.* at *2. By contrast, here, the

Plan only gives Defendants the discretion to pay certain Committee Expenses, and the complaint fails to even allege that there were any Committee Expenses that Defendants elected not to pay with forfeitures in favor of reducing future employer non-elective contributions.

In sum, the Court finds that Shulak fails to allege that the Plan gave Defendants' discretion to use forfeitures to pay administrative costs that would otherwise be incurred by participants and his complaint fails for that reason. But Shulak's breach of fiduciary duty claims would fail if Defendants had such discretion because their fiduciary duties do not obligate them to confer upon participants benefits that were not provided for in the Plan. Consequently, Shulak's breach of fiduciary duty claims are dismissed.

## II.     Anti-Inurement Provision

Under ERISA's anti-inurement provision, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Stated succinctly, the anti-inurement provision "prohibits employers from misappropriating plan assets for their own benefit." *Beck v. Pace Int'l Union*, 551 U.S. 96, 107 (2007). Shulak contends that Defendants breached this provision by using forfeitures to reduce the amount they had to contribute for future non-elective contributions, thereby benefitting themselves.

The Supreme Court has interpreted the anti-inurement provision as "focus[ing] exclusively on whether fund assets were used to pay pension benefits to plan participants." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999). Moreover, "claims under the anti-inurement provision usually require reversion or diversion of plan assets to the sponsor." *Hutchins*, 737 F. Supp. 3d at 864–65; *see also Aldridge v. Lily-Tulip, Inc. v. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) ("The [anti-inurement provision] can

only be violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants."). But here, the forfeitures were held within the Plan until they were used to provide benefits in the form of future employer non-elective contributions. Such circumstances fail to plead a violation of the anti-inurement provision. *Hutchins*, 737 F. Supp. 3d at 866 ("[There] is not a violation of the anti-inurement provision [where] the forfeited amounts are plan assets which do not leave the Plan trust fund and are used to pay pension benefits to Plan participants."). That remains the case even though BMO received some incidental benefit from the Committee's decision to allocate forfeitures as it did. *E.g.*, *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 880 (D. Ariz. 2025) ("[C]ourts have generally held that receipt of 'incidental' benefits to an employer do not constitute a breach of the anti-inurement provision."). Accordingly, Shulak's anti-inurement claim is dismissed.

### III. Prohibited Transaction

Shulak next asserts that Defendants' use of the forfeitures to offset BMO's future employer non-elective contributions was a transaction prohibited by ERISA. In particular, 29 U.S.C. § 1106(a)(1) "regulates the conduct of plan fiduciaries[ by] placing certain transactions outside the scope of their lawful authority." *Spink*, 517 U.S. at 888. Thus, § 1106(a)(1) provides as follows:

> [A] fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect—
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing goods, services, or facilities between the plan and a party in interest;

12

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1). Then, 29 U.S.C. § 1106(b)(1) "prohibits certain 'transactions between plan and fiduciary,' including where a fiduciary 'deal[s] with the assets of the plan in his own interest or for his own account.'" *Wright v. JPMorgan Chase & Co.*, No. 2:25-cv-00525-JLS-JC, 2025 WL 1683642, at *6 (C.D. Cal. June 13, 2025) (quoting 29 U.S.C. § 1106(b)(1)).

"To state a claim under § 1106(a) or (b), a plaintiff must allege a transaction within the meaning of those provisions." *Polanco*, 2025 WL 3003060, at *9 (internal quotation marks omitted). However, the Supreme Court has explained that "the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term" in § 1106. *Spink*, 517 U.S. at 892–93. For that reason, Defendants' allocation of forfeitures toward future benefits payments is not the type of transaction that is prohibited by § 1106. *E.g.*, *Cano v. Home Depot, Inc.*, No. 1:24-cv-03793-TRJ, 2025 WL 2589567, at *7 (N.D. Ga. Aug. 26, 2025) (holding that the reallocation of forfeited funds does not constitute a prohibited transaction under § 1106(a) or (b)); *Hutchins*, 737 F. Supp. 3d at 868 ("[T]he fact that reallocation of forfeited amounts will reduce the amount that [the defendant] contributes as matching contributions in the future does not make this a transaction for purposes of § 1106."). Shulak's prohibited transaction claim is dismissed.

## IV. Failure to Monitor

Finally, Shulak asserts a claim against Defendants for breaching their duty to monitor. Because this claim is derivative of the complaint's now-dismissed claims for breach of fiduciary duty, breach of ERISA's anti-inurement provision, and engaging in a prohibited transaction, the failure to monitor claim fails as well. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 583 (7th Cir. 2022)

("[D]uty to monitor claims rise or fall with [the underlying] duty of prudence and duty of loyalty claims.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 69) is granted and Shulak's complaint is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint that remedies the deficiencies discussed herein, if they can do so consistent with the requirements of Federal Rule of Civil Procedure 11, by April 20, 2026.

ENTERED:

Dated: March 30, 2026

_____
Andrea R. Wood
United States District Judge

14