# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN P. SHULAK, individually and as representative of a class of participants and beneficiaries and on behalf of the BMO 401K Savings Plan,<br><br>Plaintiff,<br><br>v.<br><br>BMO FINANCIAL CORP.; BENEFITS ADMINISTRATION COMMITTEE OF BMO FINANCIAL CORP.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:25-CV-02232<br><br>Hon. Andrea R. Wood |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

NATURE OF ACTION ...........................................................................................................1

JURISDICTION AND VENUE ...........................................................................................2

PARTIES ..............................................................................................................................3

      A.     Plaintiff. .................................................................................................3

      B.     The Plan. ................................................................................................4

      C.     Defendants. ............................................................................................5

FACTUAL ALLEGATIONS ...............................................................................................6

      A.     The Plan and Its Non-Elective Employer Contribution. ......................6

      B.     The Permitted Uses of Forfeitures Under the Plan Document. ............7

      C.     The Breadth of "Committee Expenses" Under Plan Section 11.60 .....8

      D.     Plan Section 12.11 and the Committee's Unified Control of Plan Expenses. ...................9

      E.     Structural Conflict of Interest in the Forfeiture Allocation Decision. ............10

      F.     Defendants' Uniform, Reflexive Policy of Allocating 100% of Forfeitures to Benefit BMO. ...................11

      G.     Plan-Level Administrative Expenses Were Incurred Every Year, But No Forfeitures Were Applied to Pay Them. ....................13

      H.     Absence of Any Deliberative or Prudent Process. ..............................14

      I.     The Circumstance-Specific Nature of Plaintiff's Claim. ....................17

CLASS ACTION ALLEGATIONS .....................................................................................18

      A.     Numerosity............................................................................................19

      B.     Commonality..........................................................................................19

      C.     Typicality. .............................................................................................20

      D.     Adequacy. .............................................................................................20

      E.     Superiority.............................................................................................21

      F.     Rule 23(b)(1) Certification. .................................................................21

      G.     Rule 23(b)(2) Certification. .................................................................21

FIRST CLAIM FOR RELIEF .............................................................................................22

SECOND CLAIM FOR RELIEF ........................................................................................26

THIRD CLAIM FOR RELIEF ........................................................................................................27

FOURTH CLAIM FOR RELIEF ...................................................................................................28

REQUEST FOR RELIEF ...............................................................................................................29

Plaintiff John P. Shulak ("Plaintiff"), individually and as representative of a class of participants and beneficiaries and on behalf of the BMO 401(k) Savings Plan (the "Plan"), alleges based upon information and belief, except as to matters within Plaintiff's personal knowledge, as follows:

## NATURE OF ACTION

1. This action arises from Defendants BMO Financial Corp. ("BMO") and the Benefits Administration Committee of BMO Financial Corp. (the "Committee") (collectively, "Defendants") systematically and mechanically allocating 100% of Plan forfeitures to reduce BMO's own employer contribution obligations during every year of the six-year Liability Period (November 6, 2018 through November 6, 2024), while allocating zero dollars ($0) of forfeitures to pay any "Committee Expenses" under Plan Section 11.6, as the Plan expressly authorized them to do.

2. Plaintiff does not contend, and has never contended, that every use of forfeitures to reduce employer contributions in every circumstance is a per se breach of ERISA's fiduciary duties. Rather, Plaintiff alleges that *under the specific facts and circumstances here* — which include (a) a Plan sponsor (BMO) that is simultaneously the Plan administrator and the sole financial beneficiary of forfeiture-offset decisions; (b) a Committee composed entirely of BMO employees whose personal livelihoods depend on BMO; (c) a complete absence of any documented deliberative process concerning the permitted uses of forfeitures under the Plan; (d) the employer's undisputed and continuing financial capacity to make its contractual contributions without any risk of default; (e) the fact that Plan participants were simultaneously paying administrative expenses out of their individual accounts each quarter during the same Liability Period in which Defendants allocated $0 of forfeitures to Section 11.6 Committee Expenses; and (f) a mechanical, unchanging policy applied identically year after year, including immediately

– 1 –

after a transformative corporate merger — Defendants breached their fiduciary duties of prudence and loyalty, failed to follow the terms of the Plan, and engaged in a prohibited transaction.

3. Plaintiff's allegations are grounded in Defendants' own sworn interrogatory responses dated September 19, 2025. Defendants admitted that *"for the period of November 6, 2018 through November 6, 2024, no forfeitures were used to pay either 'Committee Expenses' under Plan Section 11.6 or 'Plan and Trust Expenses' under Plan Section 12.11."* Defendants further admitted that they diverted $13,215,013 in Plan forfeitures over the liability period to satisfy BMO's corporate contribution obligations under Plan Section 4.1A. And Defendants admitted that "the terms of the Plan relating to use or allocations of forfeitures were not amended during the period of November 6, 2018 through November 6, 2024" — confirming that the Committee's allocation policy was applied mechanically year after year without any year-specific deliberation.

4. Plaintiff asserts claims for breach of fiduciary duty (Count I, under 29 U.S.C. § 1104(a)(1)(A) and (B)); failure to follow the documents and instruments governing the Plan (Count II, under 29 U.S.C. § 1104(a)(1)(D)); breach of ERISA's anti-inurement provision (Count III, under 29 U.S.C. § 1103(c)(1)); breach of ERISA's prohibited transaction rules (Count IV, under 29 U.S.C. § 1106); and failure to monitor fiduciaries (Count V).

## JURISDICTION AND VENUE

5. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f), and (g), which provide for federal subject-matter jurisdiction over actions for breach of fiduciary duty and other violations of ERISA. Jurisdiction also arises under 28 U.S.C. § 1331 because this action involves a federal question.

6. This Court has personal jurisdiction over Defendants because ERISA provides for

nationwide service of process, 29 U.S.C. § 1132(e)(2); because Defendants reside in, transact substantial business in, and have significant contacts with this District; and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

7. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, because Defendants may be found in this District, and because a substantial portion of the breaches alleged herein occurred in this District. Defendant BMO Financial Corp. maintains its principal office at 111 West Monroe Street, Chicago, Illinois, in this District.

**PARTIES**

**A. Plaintiff.**

8. Plaintiff John P. Shulak is an individual residing in North Hollywood, California. Plaintiff is and was at all relevant times a "participant" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). As of December 31, 2024, Plaintiff's Plan account balance was $120,935.37, held across multiple contribution sources including a "Company Core Contribution" account (consisting of BMO's 2% non-elective contributions under Plan Section 4.1A), a "Post 2018 BOW Company Match" account, and a "Bank 401(k) Match Account Post 2001." Plaintiff is currently invested in, among other funds, BlackRock LifePath Index 2040, 2045, 2050, 2055, and 2060 NL Funds; the JPMCB U.S. Analyst CF-F; the BNYM Mellon NSL Small Cap SIF Institutional Fund; and the Plan's Stable Value Fund.

9. Plaintiff has Article III standing and statutory standing to pursue the claims in this action. Plaintiff suffered concrete, particularized, and quantifiable injury during the Liability Period as a direct and proximate result of Defendants' conduct described herein. Among other injuries, Plaintiff's individual Plan account was charged quarterly "Plan Administration Participant Account Fees" — totaling approximately $7.50 per quarter, deducted pro rata across

Plaintiff's invested funds — that were paid from Plaintiff's account under Plan Section 12.11 (and under the Committee's corresponding rules for charging expenses to participant accounts). Had Defendants allocated any portion of the $13,215,013 in forfeitures available during the Liability Period to Section 11.6 Committee Expenses (legal, audit, fiduciary consulting, trustee-direction, and similar expenses reasonably incurred by the Committee in administering the Plan) rather than exclusively to BMO's benefit, the Committee would have had greater budgetary capacity to reduce or eliminate the participant-borne Section 12.11 expenses that were charged directly to Plaintiff's account. Plaintiff's account balance would have been higher than it was, and Plaintiff would have realized greater investment returns on the uncharged amounts over time.

10.     Plaintiff also holds an unvested "Company Core Contribution" account — representing BMO non-elective contributions subject to the Plan's three-year vesting requirement (Plan Section 9.1) — that was 0% vested as of December 31, 2024. If Plaintiff experiences a break in service before achieving full vesting, the unvested portion of that account would be forfeited and would, under Defendants' reflexive practice, be immediately applied to reduce BMO's future contribution obligations rather than retained in the Plan for the benefit of participants. Plaintiff therefore has a present and continuing stake in the lawful administration of the Plan's forfeiture mechanism.

**B.     The Plan.**

11.     The BMO 401(k) Savings Plan, formerly known as the Employees' 401(k) Savings Plan of Bank of Montreal/Harris, is a defined-contribution, individual account, employee pension benefit plan within the meaning of 29 U.S.C. §§ 1002(2)(A) and 1002(34). The Plan is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a). As of December 31, 2023, the Plan held assets totaling $4,538,074,231 on behalf of Plan participants and beneficiaries. The Plan grew substantially during the Liability Period, including through a

– 4 –

$1,500,116,195 plan transfer completed in 2023 in connection with BMO's acquisition and integration of Bank of the West. The Plan is governed by the Employees' 401(k) Savings Plan of Bank of Montreal/Harris, as Amended and Restated Effective as of January 1, 2015, together with all subsequent amendments (collectively, the "Plan Document").

### C. Defendants.

12. Defendant BMO Financial Corp. is a Delaware corporation with its principal place of business at 111 West Monroe Street, Chicago, Illinois 60603. BMO is the sponsor of the Plan; the "employer" of Plan participants within the meaning of ERISA; the entity whose contribution obligations are reduced dollar-for-dollar each year by the Committee's forfeiture allocations; and the entity with authority to appoint, monitor, and remove members of the Committee. BMO is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority and control over the management and administration of the Plan and its assets, including through its power to appoint and remove the Committee and its power (as Plan sponsor) to determine the Plan's contribution structure.

13. Defendant Benefits Administration Committee of BMO Financial Corp. (the "Committee") is the Plan Administrator under Plan Section 11.2 and is delegated authority to direct the trustee with respect to crediting and distributing Plan assets, including Plan forfeitures. The Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Based on Defendants' September 19, 2025 interrogatory responses, the Committee's day-to-day administration of the Plan — including allocation of forfeitures — is overseen by individuals who are employees of BMO Bank, N.A., including: (a) Gary Hansen, Director of U.S. Retirement & Savings Plans; and (b) Julie Makowski, Vice President, Senior HR Consultant for U.S. Retirement & Savings Plans. Each of those individuals, and all other Committee members and administrators identified to date, are employees of BMO Bank, N.A. or

an affiliated BMO entity whose compensation, performance evaluations, and continued employment are determined by and dependent upon BMO and its affiliates — the same entity whose contribution obligations are reduced by the Committee's forfeiture allocations.

14.     DOES 1 through 10, inclusive, are individuals or entities whose identities are presently unknown to Plaintiff, who served as fiduciaries of the Plan during the Liability Period — including additional members of the Committee, any sub-committees, and any other persons with discretionary authority or control over management of the Plan or disposition of Plan assets. Plaintiff will seek leave to amend to substitute the true names of the DOE Defendants once their identities are ascertained through discovery. Each DOE Defendant is alleged to have acted in concert with the named Defendants in committing the breaches of fiduciary duty alleged herein.

## FACTUAL ALLEGATIONS

### A.     The Plan and Its Non-Elective Employer Contribution.

15.     The Plan is funded by a combination of employee elective deferrals (including pre-tax, Roth, and after-tax contributions), rollover contributions, and three distinct categories of employer contributions: (a) a dollar-for-dollar matching contribution up to 5% of each participant's eligible pay (the "Matching Contribution"); (b) an unconditional non-elective contribution equal to 2% of each participant's annual eligible pay, owed whether or not the participant makes any elective deferrals of their own (the "Non-Elective Contribution"); and (c) any discretionary contributions BMO may elect to make from time to time. Together these contributions, once deposited into the Plan's trust fund, constitute assets of the Plan held in trust under 29 U.S.C. § 1103(a).

16.     Plan Section 4.1A, as added by the First and Fifth Amendments, requires BMO to make the Non-Elective Contribution — equal to 2% of each participant's eligible pay — "each pay period." This obligation is unconditional: it does not depend on whether the participant

– 6 –

contributes, how much the participant contributes, or whether the participant is still employed at year-end. It is a fixed, mandatory corporate contribution owed by BMO to the Plan under the Plan Document.

17.     Participants immediately vest in their own contributions and earnings thereon, and in BMO's Matching Contributions. Under Plan Section 9.1, participants vest in BMO's Non-Elective Contributions only upon attaining three years of credited service. If a participant experiences a break in service prior to full vesting of Non-Elective Contributions, the unvested balance is forfeited under Plan Section 10.1(d) upon the earlier of (i) the time the participant receives a distribution of the entire non-forfeitable portion of all their account balances or (ii) the date the participant incurs five consecutive one-year breaks in service. Once forfeited, the balance becomes a Plan asset subject to the Committee's allocation authority under Section 10.1(d).

### B.     The Permitted Uses of Forfeitures Under the Plan Document.

18.     Plan Section 10.1(d), as amended, provides in pertinent part: "Forfeitures shall be applied to pay plan expenses as permitted under subsection 11.6 or to reduce future non-elective contributions."  The Plan Document thus expressly authorizes two distinct uses of forfeitures: (i) payment of Plan expenses permitted under Section 11.6, or (ii) reduction of future BMO Non-Elective Contributions.  The Plan Document does not mandate that one option be prioritized over the other; rather, the Committee – subject to the fiduciary duties ERISA imposes –  has discretion to determine how available forfeitures should be allocated between those two options under the specific facts and circumstances of each year.

19.     The Committee's discretion under Section 10.1(d) is, however, cabined by ERISA. As the Supreme Court has held, a fiduciary's duties under ERISA "trump[] the instructions of a plan document," Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 421

– 7 –

(2014), and the fiduciary must exercise any plan-granted discretion consistently with 29 U.S.C. § 1104(a)'s duties of loyalty, prudence, and adherence to the documents and instruments governing the plan.

### C. The Breadth of "Committee Expenses" Under Plan Section 11.60

20. Plan Section 11.6, titled "Committee Expenses," provides in full: "All costs, charges and expenses reasonably incurred by the committee will be paid from the trust fund unless paid by the employers in such proportions as the bank may direct. No compensation will be paid to a committee member as such."

21. By its plain terms, Section 11.6 is broad and all-encompassing: it authorizes payment from the trust fund of "*All costs, charges and expenses reasonably incurred by the committee*" (emphasis added). The provision does not limit itself to bare out-of-pocket committee-meeting costs. It sweeps in the full range of costs that the Committee, as Plan Administrator, reasonably incurs in discharging its duties under the Plan, including but not limited to: (a) legal fees paid to ERISA counsel; (b) independent auditor fees; (c) fiduciary consulting and investment consulting fees; (d) trustee compensation and trustee-direction expenses; (e) recordkeeping and administration vendor fees negotiated and paid by the Committee; (f) Form 5500 preparation and filing fees; (g) actuarial and benefits-consulting fees; and (h) other professional services engaged by or on behalf of the Committee to administer the Plan in accordance with ERISA and the Plan Document.

22. The Committee has broad administrative authority under the Plan Document. Plan Section 11.2 delegates to the Committee full authority and responsibility for administering the Plan. Plan Section 11.6's reference to "All costs, charges and expenses reasonably incurred by the committee" must be read in context with Section 11.2's delegation of wide-ranging Committee authority. Costs incurred by vendors engaged at the Committee's direction to support

the Committee's administration of the Plan are "costs, charges and expenses reasonably incurred by the committee" within the meaning of Section 11.6, and are eligible to be paid from the trust fund (and therefore eligible to be paid from forfeitures under Section 10.1(d)).

23.     In response to Plaintiff's Request for Production No. 15 — which sought documents relating to the Committee's "exercise of discretionary authority over administrative costs" — Defendants in their September 19, 2025 responses construed the phrase as meaning "exercise authority to pay administrative expenses from Plan assets."  This construction constitutes a contemporaneous admission that the Committee has authority to pay administrative expenses from Plan assets, including from forfeitures, in the Committee's discretion.

**D.      Plan Section 12.11 and the Committee's Unified Control of Plan Expenses.**

24.     Plan Section 12.11, titled "Plan and Trust Expenses," provides that "reasonable expenses of the plan and trust shall be paid from the trust fund to the extent not paid by the employers" and that, "*[i]n accordance with rules established by the committee and disclosed to participants*, expenses to be paid or reimbursed from the trust fund may be drawn from participants' accounts, in the form of a flat fee, charges for specific services, or a percentage of the value of each account, or earnings or gains in each investment fund" (emphasis added). The Committee therefore controls both (a) the scope of Section 11.6 Committee Expenses and (b) the "rules" under which Section 12.11 expenses are charged to participants. The two sections are not hermetically sealed categories existing independently of the Committee's authority; rather, the Committee controls the boundary between them.

25.     During the Liability Period, Plan expenses under Section 12.11 were in fact drawn directly from participant accounts. Plaintiff's own quarterly participant account statements reflect regular deductions labeled "Plan Administration Participant Account Fee" (typically

approximately $7.50 per quarter, allocated pro rata across Plaintiff's invested funds), in addition to other "Withdrawal Charges" such as loan origination fees. Similar deductions were charged to every participant account during the Liability Period.

**E.    Structural Conflict of Interest in the Forfeiture Allocation Decision.**

26.    The Committee's decision whether to allocate available forfeitures to Section 11.6 Committee Expenses or to reduce BMO's Non-Elective Contribution obligations under Section 4.1A is inherently conflicted. The choice directly affects BMO's bottom line: every dollar of forfeitures allocated to reduce BMO's Non-Elective Contributions is a dollar that BMO retains in its general corporate treasury rather than depositing into the Plan's trust fund. Conversely, every dollar of forfeitures allocated to pay Section 11.6 Committee Expenses is a dollar that BMO (or the Plan, funded by participant charges under Section 12.11) would otherwise bear.

27.    The Committee is composed of and/or administered exclusively by employees of BMO Bank, N.A. and related BMO entities. The individuals responsible for day-to-day administration of the Plan — including Gary Hansen and Julie Makowski — are BMO employees whose compensation, performance evaluations, and continued employment are determined by BMO. BMO also has full authority under the Plan Document to remove Committee members at will ("A member of the committee may be removed by the bank at any time by ten days' prior written notice"; Plan § 11.5). Committee members therefore have personal financial interests that are aligned with — and structurally dependent upon — BMO's corporate interest in minimizing its Plan contribution obligations.

28.    Despite this structural conflict, Defendants retained no independent fiduciary or non-conflicted decision-maker to review, evaluate, or advise on the Committee's annual forfeiture allocation decisions during the Liability Period. Defendants' interrogatory responses do not identify any such independent fiduciary. Defendants' Request-for-Production responses

– 10 –

identify no document reflecting independent review of the forfeiture allocation practice.

**F.** **Defendants' Uniform, Reflexive Policy of Allocating 100% of Forfeitures to Benefit BMO.**

29. In their September 19, 2025 sworn interrogatory responses, Defendants admitted that they used $0 in Plan forfeitures to pay any expenses under either Plan Section 11.6 or Plan Section 12.11 during the entire six-year Liability Period. Specifically, Defendants' Answer to Plaintiff's Interrogatory No. 4 states, verbatim: "[F]or the period of November 6, 2018 through November 6, 2024, no forfeitures were used to pay either 'Committee Expenses' under Plan Section 11.6 or 'Plan and Trust Expenses' under Plan Section 12.11." This admission is made under penalty of perjury and is binding on Defendants.

30. 30. Instead, Defendants applied 100% of available forfeitures — after required restorations under Plan Section 10.1(e) — to reduce BMO's Non-Elective Contribution obligations. Defendants' Answer to Plaintiff's Interrogatory No. 5 identified the precise year-by-year amounts diverted to BMO's benefit:

| Plan Year | Forfeitures Allocated to Reduce BMO's Non-Elective Contributions | Forfeitures Used for § 11.6 or § 12.11 Expenses |
|---|---|---|
| 2018 | $1,522,094 | $0 |
| 2019 | $1,022,006 | $0 |
| 2020 | $1,802,854 | $0 |
| 2021 | $1,921,322 | $0 |
| 2022 | $1,180,804 | $0 |
| 2023 | $1,278,427 | $0 |
| 2024 | $4,487,506 | $0 |
| **TOTAL** | **$13,215,013** | **$0** |

31. Defendants' sworn admission further confirmed, in the Answer to Plaintiff's

– 11 –

Interrogatory No. 7, that "the terms of the Plan relating to use or allocations of forfeitures were not amended during the period of November 6, 2018 through November 6, 2024." The Committee's allocation policy — 100% to BMO's benefit, 0% to Section 11.6 Committee Expenses — was thus applied identically each and every year of the Liability Period, without modification, without exception, and (as discussed below) without any documented year-specific deliberation.

32.     The Plan's publicly filed Form 5500 annual reports for each year from 2018 through 2023 confirm the same uniform, reflexive pattern. Each year's Form 5500 footnote uses nearly identical language, reciting that "Forfeitures shall be applied to pay Plan expenses as permitted or to reduce future non-elective contributions," and then identifying the dollar amount of forfeitures used exclusively to "reduce Company contributions." In each year from 2018 through 2022, the Form 5500 also reported an unallocated forfeiture year-end balance of $0 — meaning that every available dollar of forfeitures was deployed in BMO's favor. In 2023, following the Bank of the West plan transfer of $1,500,116,195, the unallocated forfeiture balance at year-end was reported for the first time as $7,344,495.

33.     The year 2024 is particularly instructive. After BMO's acquisition and integration of Bank of the West doubled the Plan's size and substantially increased its administrative complexity, forfeitures in 2024 spiked to $4,487,506 — roughly 3.5 times the annual forfeitures for any year preceding the merger. Despite this dramatic change in circumstances, the Committee continued to allocate 100% of available forfeitures to BMO's benefit and $0 to Section 11.6 Committee Expenses. The uniformity and persistence of the Committee's allocation policy, across a range of divergent circumstances — including a transformative corporate merger — is powerful circumstantial evidence that the Committee applied a mechanical, reflexive, non-

– 12 –

deliberative policy rather than exercising the reasoned, circumstance-specific fiduciary judgment ERISA requires.

**G.** **Plan-Level Administrative Expenses Were Incurred Every Year, But No Forfeitures Were Applied to Pay Them.**

34.     During each and every year of the Liability Period, the Plan incurred substantial administrative expenses, as reflected on the Plan's Form 5500 filings. Specifically, the Plan's Form 5500 Statements of Changes in Net Assets Available for Benefits report the following total administrative expenses:

| Plan Year | Plan Administrative Expenses | Forfeitures Available |
|---|---|---|
| 2018 | $1,598,675 | $1,522,094 |
| 2019 | $1,768,675 | $1,022,006 |
| 2020 | $1,706,601 | $1,802,854 |
| 2021 | $1,586,054 | $1,921,322 |
| 2022 | $1,568,952 | $1,180,804 |
| 2023 | $1,141,761 | $1,278,427 |
| **TOTAL** | **$9,370,718** | **$8,727,507** |

35.     These administrative expenses included — as is standard for a defined-contribution plan of comparable size and complexity — legal fees paid to ERISA counsel, independent auditor fees, trustee and investment consulting fees, fiduciary consulting fees, Form 5500 preparation fees, recordkeeping vendor compensation, and similar expenses necessary to administer the Plan. A substantial portion of these administrative expenses qualify as "costs, charges and expenses reasonably incurred by the committee" within the meaning of Plan Section 11.6, and accordingly were eligible to be paid from Plan forfeitures under Plan Section 10.1(d).

36.     In two of the Liability Period years — 2020 ($1,802,854 forfeitures versus

– 13 –

$1,706,601 administrative expenses) and 2023 ($1,278,427 forfeitures versus $1,141,761 administrative expenses) — the available forfeitures exceeded the Plan's total annual administrative expenses. In those years, had Defendants applied forfeitures first to Section 11.6 Committee Expenses and then to BMO's Non-Elective Contribution obligations (the allocation an independent, non-conflicted fiduciary would have considered), forfeitures could have covered the entire annual administrative expense burden and still left a meaningful surplus. In other years (2019, 2021, 2022), available forfeitures could have been applied to substantially reduce — even if not eliminate — the Plan's administrative expenses. The total gap between six-year administrative expenses ($9,370,718) and six-year forfeitures ($8,727,507) is approximately $643,211 — meaning that approximately 93% of the Plan's total administrative expenses during the Liability Period could have been covered by forfeitures, had Defendants exercised their fiduciary discretion to allocate forfeitures in that manner. Defendants applied $0 of forfeitures to those expenses.

37. A portion of the Plan's annual administrative expenses was charged directly to participant accounts under Section 12.11 during the Liability Period. Plaintiff and each member of the proposed class had quarterly "Plan Administration Participant Account Fee" deductions charged to their Plan accounts. Had Defendants used available forfeitures to pay Section 11.6 Committee Expenses, the Committee — which controls the Section 12.11 rules for charging expenses to participants — would have had substantially greater budgetary room to reduce or eliminate the participant-borne Section 12.11 expenses that were charged directly to Plaintiff and other participants' individual accounts each quarter.

H.      **Absence of Any Deliberative or Prudent Process.**

38. Defendants' interrogatory responses establish that the Committee's decision to allocate 100% of forfeitures to BMO's benefit every year was not the product of any meaningful,

– 14 –

deliberative, year-specific fiduciary process. To the contrary, Defendants admitted that "the terms of the Plan relating to use or allocations of forfeitures were not amended" during the entire six-year Liability Period, and described the allocation practice as uniform and unchanged. Defendants identified no meeting, resolution, or analysis that considered — in any given year — whether the circumstances of that year called for a different allocation.

39. Plaintiff served Request for Production No. 13, which sought: "All DOCUMENTS, such as meeting minutes, resolutions, or internal memoranda, from each of YOUR OFFICES that describe and/or reflect decisions made by the Benefits Administration Committee regarding the incurrence or approval of administrative costs, charges, or expenses." Defendants did not assert privilege over this request and agreed to produce responsive non-privileged documents. Upon information and belief, and based on the documents produced to date, Defendants have not produced any Committee meeting minutes, resolutions, or internal memoranda reflecting any deliberative analysis by the Committee of whether to allocate forfeitures to Section 11.6 Committee Expenses in any year of the Liability Period. The absence of any such deliberative documentation confirms that the Committee applied the Section 10.1(d) allocation choice mechanically and reflexively, without the reasoned, circumstance-specific fiduciary consideration ERISA requires.

40. Had Defendants undertaken a prudent and loyal process to evaluate whether, under the facts and circumstances of each year of the Liability Period, allocating forfeitures to reduce BMO's Non-Elective Contributions or to pay Section 11.6 Committee Expenses would better serve the interests of Plan participants and beneficiaries, a prudent and loyal fiduciary would have, at a minimum:

      a. investigated whether there was any risk that BMO would default on its

– 15 –

Non-Elective Contribution obligations if forfeitures were applied instead to pay Section 11.6 Committee Expenses — a question the answer to which is self-evidently "no," given that BMO is a subsidiary of Bank of Montreal, one of the largest financial institutions in North America, with tens of billions of dollars in annual revenue and no disclosed financial distress during the Liability Period;

b.  evaluated the range, scope, and quantifiable amount of Section 11.6 Committee Expenses incurred each year (including legal, audit, consulting, recordkeeping, and trustee-related fees associated with the Committee's administration of the Plan), and compared that amount to the available forfeitures;

c.  considered the impact on Plan participants of allocating forfeitures to reduce BMO's contributions rather than to Section 11.6 Committee Expenses — including the extent to which the Committee's allocation would leave participants bearing Section 12.11 expenses out of their individual accounts that could otherwise have been reduced or eliminated;

d.  retained or consulted with an independent, non-conflicted fiduciary or advisor to evaluate the forfeiture allocation decision, given the Committee's inherent structural conflict as a body composed entirely of BMO employees;

e.  documented the Committee's deliberation and reasoning in meeting minutes, resolutions, or similar records, as a prudent fiduciary would do when exercising discretion over a conflicted decision involving millions of

– 16 –

dollars of Plan assets; and

    f.   periodically reconsidered the allocation in light of changing circumstances — including substantial changes in the Plan's size and administrative complexity following the Bank of the West acquisition and integration in 2023.

41. Defendants did none of these things, or if they did, they have produced no document reflecting any such analysis. Instead, for six consecutive years and counting — through elective-deferral changes, employer-contribution changes, multiple Plan amendments, two years of negative investment returns (2018 and 2022), and a transformative $1.5 billion corporate merger — the Committee applied the same mechanical 100%-to-BMO allocation, year in and year out.

**I.    The Circumstance-Specific Nature of Plaintiff's Claim.**

42. Plaintiff does not allege that it is a per se breach of ERISA's fiduciary duties for a fiduciary, exercising reasoned and documented discretion under a plan document like this one, to allocate forfeitures to reduce employer contributions rather than to pay plan expenses. There are circumstances in which such an allocation may benefit participants: for example, where the plan sponsor faces credible financial distress and there is a genuine risk that, absent the offset, the employer would be unable to make its required contributions. Such circumstances did not exist here. BMO is a highly profitable, well-capitalized, multi-billion-dollar banking enterprise. No credible risk of employer default existed in any year of the Liability Period. That structural fact about BMO was knowable to the Committee at all relevant times. No prudent, loyal, non-conflicted fiduciary acting solely in the interest of Plan participants would have — in these specific circumstances — mechanically allocated 100% of six years of forfeitures to BMO's benefit while simultaneously charging participants quarterly administration fees out of their

individual accounts, with no documented deliberation about the alternative permitted by Section 10.1(d).

43.     Nor does Plaintiff contend that ERISA's fiduciary duties override the Plan Document or create benefits not provided for in the Plan.  Plaintiff's allegations do not ask this Court to read into the Plan a new benefit in the payment of administrative expenses. Rather, Plaintiff asks this Court to recognize that the Plan Document itself — in Section 10.1(d), read together with Sections 11.6, 12.11, and 11.2 — authorizes the Committee to pay Section 11.6 Committee Expenses from forfeitures.  That authority was never exercised in Plaintiff's favor during the Liability Period, despite the existence every year of substantial Committee Expenses eligible for such payment, despite the availability every year of forfeitures sufficient to cover a substantial portion of those expenses, and despite the simultaneous charging of administrative fees to participant accounts under Section 12.11. ERISA's fiduciary duties required the Committee, at a minimum, to engage in a reasoned and documented process when exercising its Section 10.1(d) discretion. The Committee did not

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(2). Plaintiff seeks certification of the following class (the "Class"):

> All participants and beneficiaries of the BMO 401(k) Savings Plan
> (formerly known as the Employees' 401(k) Savings Plan of Bank
> of Montreal/Harris) who participated in the Plan at any time during
> the period beginning November 6, 2018 and continuing through
> the date of judgment, excluding the Defendants and any
> participants or beneficiaries who serve or served as fiduciaries of

the Plan during the Class Period.

45.     Plaintiff and the Class reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

46.     This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

**A.     Numerosity.**

47.     The Class consists of thousands of members. The Plan's Form 5500 filings report total Plan assets in excess of $1.87 billion at the start of the Liability Period and over $4.5 billion by year-end 2023, with annual employer contributions exceeding $90 million in each Liability Period year.  The number of Class members is sufficiently numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

**B.     Commonality.**

48.     There are numerous questions of law and fact common to the Class, including, without limitation:

    a.   whether Defendants are fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A);

    b.   whether Defendants breached their duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A) and (B) by mechanically allocating 100% of Plan forfeitures to reduce BMO's Non-Elective Contributions, with no deliberation or analysis, while participants simultaneously bore administrative expenses in their individual accounts;

    c.   whether Defendants violated their duty to follow the documents and

instruments governing the Plan under 29 U.S.C. § 1104(a)(1)(D);

    d.   whether the proper construction of Plan Section 11.6 ("all costs, charges and expenses reasonably incurred by the committee") encompasses the range of administrative expenses described herein;

    e.   whether Defendants violated ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1), by causing Plan assets to be used to discharge BMO's corporate contribution obligations;

    f.   whether Defendants caused the Plan to engage in prohibited transactions under 29 U.S.C. § 1106;

    g.   whether BMO breached its fiduciary duty to monitor the Committee; and

    h.   the appropriate form and measure of Plan-wide equitable, injunctive, and monetary relief, including the calculation of Plan losses and lost investment returns.Common questions of law and fact exist as to all members of the proposed class.

**C.    Typicality.**

49.    Plaintiff's claims are typical of the claims of other Class members. Plaintiff participated in the Plan during the Liability Period, had Section 12.11 participant-account administrative fees deducted from his Plan account, and was affected by the uniform Committee allocation practice in the same manner as every other Class member. Plaintiff's injuries arise from the same conduct, policies, and practices of Defendants that injured every other Class member. Fed. R. Civ. P. 23(a)(3)..

**D.    Adequacy.**

50.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained counsel with substantial

and varied experience in prosecuting complex ERISA class actions, and Plaintiff's counsel will fairly and adequately represent the interests of the Class. Fed. R. Civ. P. 23(a)(4).

**E.**  **Superiority.**

51. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed Class is not practicable, and common questions of law and fact exist as to all class members.

52. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**F.**  **Rule 23(b)(1) Certification.**

53. Class certification is appropriate under Rule 23(b)(1)(A) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants concerning their fiduciary duties to the Plan and their personal liability under 29 U.S.C. § 1109(a). Class certification is also appropriate under Rule 23(b)(1)(B) because adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Plaintiff's claims arise from Defendants' Plan-wide fiduciary breaches and do not involve individualized mismanagement of participant accounts.

**G.**  **Rule 23(b)(2) Certification.**

54. In the alternative, or in addition, class certification is appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the

Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

**FIRST CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**29 U.S.C. § 1104(A)(1)**
**(AGAINST ALL DEFENDANTS)**

55. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

56. Under 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties owed to the Plan "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries, and (ii) defraying reasonable expenses of administering the plan."

57. Defendants breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) by utilizing forfeited Plan assets for its benefit, rather than the benefit of Plan participants. Defendants have chosen to apply forfeited Plan assets to decrease future employer contributions, instead of using those funds for the benefit of Plan participants. In doing so, Defendants placed their interests above the interests of Plan participants and beneficiaries.

58. Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

59. Defendants breached their duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) by allocating 100% of forfeitures each year of the Liability Period, as a matter of uniform and unreflective practice, to reduce BMO's corporate Non-Elective Contribution obligations under

Plan Section 4.1A, while allocating $0 to pay any Committee Expenses under Plan Section 11.6, even though: (i) the Plan Document expressly authorized the Section 11.6 allocation; (ii) Section 11.6 expenses were incurred every year, in significant amounts; (iii) Plan participants were simultaneously bearing administrative expenses under Plan Section 12.11 that were charged directly to their individual accounts; (iv) the Committee is composed of and/or administered by BMO employees whose personal financial interests are aligned with BMO's corporate interests; and (v) no credible risk of BMO's default on its contribution obligations existed in any year of the Liability Period. In making the forfeiture allocation decisions challenged herein, Defendants were motivated by their own interests, and BMO's corporate interests, rather than by the exclusive interests of Plan participants and beneficiaries.

60. Defendants breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) by failing to engage in any reasoned, documented, or circumstance-specific deliberative process when exercising the discretionary authority afforded to the Committee under Plan Section 10.1(d). Defendants did not investigate BMO's financial capacity to make its contractual contributions; did not consider the impact of the forfeiture allocation on Plan participants (including participants simultaneously bearing Section 12.11 fees in their accounts); did not retain or consult an independent, non-conflicted fiduciary to advise on the allocation given the Committee's structural conflict; did not document any year-specific deliberation in meeting minutes or similar records; and did not reconsider the practice at any point during the Liability Period, including after the transformative $1.5 billion Bank of the West plan transfer that fundamentally altered the Plan's size, complexity, and administrative expense profile. A prudent fiduciary acting under these circumstances, with these duties, would have done each of those things. Defendants did none.

61.     Defendants' breaches of the duties of loyalty and prudence caused direct, quantifiable injury to the Plan and to Plaintiff and other Class members. Defendants caused the Plan to receive $13,215,013 less in employer Non-Elective Contributions than it would otherwise have received, because that amount was offset dollar-for-dollar against forfeitures held in the Plan. Defendants caused Plan participants, including Plaintiff, to bear administrative fees charged directly to their individual accounts that would have been reduced or eliminated had Defendants allocated available forfeitures to Section 11.6 Committee Expenses. And Defendants caused the Plan and its participants to lose the investment returns on the employer contributions that were not made, and on the participant-account deductions that were avoidably taken.

62.     Defendants' wrongful conduct, as alleged herein, caused the Plan to receive fewer future employer contributions than it would otherwise received, and depleted Plan assets.

63.     As a direct and proximate cause of Defendants' fiduciary breaches, the Plan suffered injury and losses and, pursuant to 29 U.S.C. § 1109, Defendants' are liable for such losses.

64.     Pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), Defendants are personally liable to make good to the Plan all losses resulting from the breaches of fiduciary duty alleged herein, to restore to the Plan any profits realized through use of Plan assets in violation of ERISA, and to provide all other equitable and remedial relief as appropriate. Each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a), because each Defendant knowingly participated in the breaches of the others, enabled the breaches by failing to discharge its own fiduciary duties lawfully, knew of the breaches by the others, and failed to make any reasonable effort under the circumstances to remedy them.

65.     Under 29 U.S.C. § 1104(a)(1)(D), Defendants were required to discharge their

duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."

66. The Plan Document authorizes two distinct uses of forfeitures under Section 10.1(d): (i) payment of Plan expenses as permitted under Section 11.6, or (ii) reduction of future Non-Elective Contributions. Section 11.6 authorizes payment from the trust fund of "[a]ll costs, charges and expenses reasonably incurred by the committee" in administering the Plan — a broad category that, properly construed, encompasses the range of Plan-level administrative expenses detailed herein, including legal, audit, fiduciary consulting, and trustee-direction expenses incurred by or at the direction of the Committee.

67. Defendants breached their duty to follow the Plan Document under 29 U.S.C. § 1104(a)(1)(D) by construing Section 11.6 narrowly and applying the Section 10.1(d) allocation as if the first option (Committee Expenses) were functionally unavailable. By applying $0 of forfeitures to any Section 11.6 Committee Expense in any year of the six-year Liability Period, Defendants failed to give effect to the first of the two uses expressly authorized by the Plan Document, and rendered that first option a dead letter. Defendants' systematic nullification of the first authorized use of forfeitures was not grounded in any Plan-textual analysis, nor in any documented determination that Section 11.6 Committee Expenses did not exist in any given year (they did); it instead reflected a standing, reflexive, conflicted policy to apply every available dollar of forfeitures to BMO's benefit.

68. Defendants' breach of 29 U.S.C. § 1104(a)(1)(D) caused direct injury to the Plan and to Plaintiff and other Class members in the same amounts and in the same manner as alleged in Count I. Pursuant to 29 U.S.C. §§ 1109, 1105(a), and 1132(a)(2), Defendants are personally liable to make good to the Plan all losses resulting from this breach and to provide all other

equitable and remedial relief appropriate.

**SECOND CLAIM FOR RELIEF**
**BREACH OF ERISA'S ANTI-INUREMENT PROVISION**
**29 U.S.C. §1103(C)(1)**
**(AGAINST ALL DEFENDANTS)**

69.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

70.     Under 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

71.     Unvested amounts forfeited under Plan Section 10.1(d) are assets of the Plan at the moment of forfeiture. Plan Section 4.1A imposes an unconditional, fixed obligation on BMO to make Non-Elective Contributions equal to 2% of each participant's eligible pay. That obligation is owed by BMO to the Plan from BMO's general corporate assets, independent of the existence or amount of forfeitures.

72.     By systematically and mechanically applying $13,215,013 of Plan forfeitures during the Liability Period to satisfy BMO's pre-existing, unconditional contractual obligation to fund the Plan with Non-Elective Contributions under Section 4.1A, Defendants caused Plan assets to be used to discharge BMO's corporate obligation — thereby causing Plan assets to inure, in substance and economic effect, to the benefit of BMO in violation of 29 U.S.C. § 1103(c)(1). Each dollar of forfeitures allocated in this manner is a dollar that BMO retained in its general corporate treasury rather than depositing into the Plan's trust fund.

73.     The benefit received by BMO is not incidental; it is the direct and intended economic consequence of the Committee's allocation decisions. BMO's contribution obligations

– 26 –

were reduced dollar-for-dollar by the forfeiture allocations — a mathematical offset, not a downstream secondary effect. Pursuant to 29 U.S.C. §§ 1109, 1105(a), and 1132(a)(2), Defendants are personally liable to make good to the Plan all losses resulting from this breach and to restore to the Plan all profits and benefits secured by BMO through use of Plan assets, and to provide all other equitable and remedial relief appropriate.

**THIRD CLAIM FOR RELIEF**
**BREACH OF ERISA'S PROHIBITED TRANSACTIONS**
**29 U.S.C. § 1106**
**(Against All Defendants)**

74.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

75.     Under 29 U.S.C. § 1106(a)(1), a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." Under 29 U.S.C. § 1106(b)(1), a fiduciary "shall not . . . deal with the assets of the plan in his own interest or for his own account." BMO is a party in interest within the meaning of 29 U.S.C. § 1002(14) because it is the employer of Plan participants; the Committee is a party in interest because it is a fiduciary of the Plan.

76.     The transactions challenged here are the Committee's annual decisions during the Liability Period to allocate forfeitures in the manner alleged — decisions that substituted Plan assets (forfeitures) for BMO's otherwise-unconditional obligation to contribute cash to the Plan under Section 4.1A. Each such decision constituted a "use by or for the benefit of a party in interest" of Plan assets within the meaning of § 1106(a)(1)(D), because the direct, foreseeable, and intended economic effect was to discharge BMO's corporate contribution obligation. Each

such decision also constituted self-dealing by the Committee within the meaning of § 1106(b)(1), because the Committee — composed of BMO employees whose livelihoods depend on BMO — dealt with Plan assets in a manner that directly benefited BMO (and by extension the Committee members' employer) at the expense of the Plan and its participants.

77. Pursuant to 29 U.S.C. §§ 1109, 1105(a), and 1132(a)(2), Defendants are personally liable to make good to the Plan all losses resulting from these prohibited transactions and to restore to the Plan all profits and benefits secured through the prohibited transactions. Defendants are also subject to disgorgement and other equitable relief appropriate to remedy the prohibited transactions..

### FOURTH CLAIM FOR RELIEF
### FAILURE TO MONITOR FIDUCIARIES
### (AGAINST BMO FINANCIAL CORP. AND DOES 1–10)

78. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

79. BMO, through its Board of Directors and its officers, had the authority under the Plan Document to appoint, monitor, and remove members of the Committee. That appointment authority, under ERISA, is accompanied by a concomitant and continuing fiduciary duty to monitor the Committee's discharge of its fiduciary responsibilities and to take prompt corrective action in the event of any breach or indication of breach.

80. BMO received the Plan's annual Form 5500 filings each year of the Liability Period. Those filings publicly disclosed — in footnote language identical across six consecutive years — that forfeitures had been used exclusively to reduce Company contributions, and that forfeitures had never been used to pay Plan expenses. BMO was on notice, from its own publicly-filed disclosures, that the Committee was mechanically applying the same 100%-to-

– 28 –

BMO allocation every year, without variation, even as Plan assets more than doubled and a transformative corporate merger was absorbed into the Plan. Despite this notice, BMO undertook no corrective action, retained no independent fiduciary to evaluate the practice, instituted no deliberative process at the Committee level, and removed no Committee member.

81.     BMO breached its fiduciary duty to monitor the Committee by, among other things: (a) failing to monitor whether the Committee was discharging its fiduciary duties with respect to the annual forfeiture allocation decision in a manner consistent with ERISA; (b) failing to evaluate whether the Committee — composed entirely of BMO employees — was capable of exercising the independent, non-conflicted judgment required for a conflicted fiduciary decision of this magnitude; (c) failing to require the Committee to document year-specific deliberations and circumstance-specific analysis; (d) failing to retain an independent fiduciary or advisor to assist the Committee in evaluating the allocation; and (e) failing to remedy the Committee's uniform, reflexive practice once it became apparent from the face of the Form 5500 filings.

82.     BMO's breach of its duty to monitor caused direct and continuing injury to the Plan and its participants in the amounts alleged in Counts I through III. Pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), BMO is personally liable to make good to the Plan all losses resulting from its failure to monitor the Committee, and to provide all other equitable and remedial relief appropriate.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, prays for judgment against Defendants as follows:

1.  Certification of the Class under Rule 23(b)(1) and, in the alternative or in addition, Rule 23(b)(2), designation of Plaintiff as the Class Representative, and designation of Plaintiff's counsel as Class Counsel;

2.  A declaration that Defendants have breached their fiduciary duties under ERISA;

3.  An order compelling Defendants to make good to the Plan all losses resulting from the breaches of fiduciary duty alleged herein, and to restore the Plan to the position it would have occupied but for those breaches;

4.  An order requiring Defendants to disgorge any profits secured or otherwise retained as a result of the ERISA violations alleged herein, and imposition of a constructive trust, an accounting for profits, or surcharge as necessary to effectuate that relief;

5.  An accounting to determine the precise amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

6.  Removal of any fiduciaries who have breached their fiduciary duties as alleged herein, and appointment of an independent fiduciary to oversee the Plan's forfeiture allocation practices going forward;

7.  An order enjoining Defendants from engaging in further violations of their ERISA fiduciary responsibilities;

8.  Pre-judgment and post-judgment interest as permitted by law;

9.  Attorneys' fees, litigation expenses, and costs pursuant to 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

10. A service award to Plaintiff in recognition of his service to the Class; and

11. Such other and further equitable or remedial relief as the Court deems just and proper.

Dated: April 20, 2026                    Respectfully submitted,

                                         **HAFFNER LAW PC**

                                         */s/ Alfredo Torrijos*
                                         Joshua H. Haffner, *pro hac vice*
                                         Alfredo Torrijos, *pro hac vice*
                                         Vahan Mikayelyan, *pro hac vice*

– 30 –

15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Telephone: (213) 514-5681
Fax: (213) 514-5681
jhh@haffnerlawyers.com
at@haffnerlawyers.com
vh@haffnerlawyers.com

**WALCHESKE & LUZI, LLC**
Paul M. Secunda
125 S. Wacker Drive, Suite 300
Chicago, IL 60606
Telephone: (414) 828-2372
Fax: (262) 565-6569
psecunda@walcheskeluzi.com

*Attorneys for Plaintiff John P. Shulak,
individually and on behalf of all others
similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 20, 2026.

By: */s/ Alfredo Torrijos*
*Alfredo Torrijos*